IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FELIPE MARTINEZ,

        Plaintiff,

  vs.                                                                            No. CIV 01-259 LFG/DJS

CITY OF ALBUQUERQUE, and
DANNY LONGORIA, COUNTY OF BERNALILLO,
and STEVE DURANCEAU,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## ON DEFENDANTS' SUMMARY JUDGMENT MOTIONS
## AND PLAINTIFF'S MOTION TO AMEND

THIS MATTER comes before the Court on the Motion for Summary Judgment [Doc. 22] by Defendants City of Albuquerque and Danny Longoria (collectively "the City Defendants"); the Motion for Summary Judgment [Doc. 26] by Defendants County of Bernalillo and Steve Duranceau (collectively "the County Defendants"); and the Motion to Amend the Complaint [Doc. 34] by Plaintiff Felipe Martinez ("Martinez"). These motions were submitted as packages in accord with local practice. Oral argument is not necessary. For the reasons given below, the Court will deny both motions for summary judgment, and Plaintiff's Motion to Amend the complaint will be granted in part, and denied in part.

## Factual and Procedural Background

In this Section 1983 action, brought in state court and removed to federal court by Defendants, Martinez seeks compensatory and punitive damages based on allegations that he was

subjected to malicious prosecution and was deprived of his property without due process of law.

Defendant Danny Longoria ("Longoria") is a police officer employed by Albuquerque Police Department ("APD"). He states in his affidavit that on March 17, 2000, he was assigned to APD's Auto Theft Unit and was also commissioned by the Motor Vehicle Division ("MVD") of the New Mexico Taxation and Revenue Department, to investigate violations of the Motor Vehicle Code. On that date, Longoria was working on an investigation along with Defendant Steve Duranceau, a deputy with the Bernalillo County Sheriff's Department. While investigating a dealership across the street from a lot leased by Martinez, the officers noticed that a sign which previously identified the business as "Valley Auto Sales" had been changed and now read "Martinez Auto Sales."

Longoria thereupon sent in an inquiry to the MVD to determine whether Martinez Auto Sales was licensed for business. He says in his affidavit that MVD informed him that there was no auto dealer licensed for business at the Martinez Auto Sales address. He also states that two detectives attempted to purchase an automobile from Martinez, and that Martinez attempted to sell a vehicle.

Defendant Steve Duranceau, the deputy sheriff, states in his affidavit that while investigating an automobile dealership across the street from Martinez Auto Sales, he and Longoria noticed Martinez' sign and observed that the gates to the Martinez lot were open, that there were a number of automobiles parked on the lot which appeared to be the same automobiles offered for sale by a previous proprietor of the Martinez lot, and that a number of people who appeared to be customers were entering and leaving the lot.

Duranceau states further that this activity led him and Longoria, along with MVD Special Agent Christopher Ibarra, to walk across the street to speak with Martinez, whom they found standing next to an automobile with an open trunk. Longoria also states that, after Martinez

2

attempted to sell an automobile to the two detectives, he approached Martinez and identified himself as a police officer.

Duranceau says that when the officers identified themselves and asked to see Martinez' dealer's license, he responded that his license was "in process" and did not deny that he was open for business. Duranceau confirms Longoria's statement that the MVD told the officers that Martinez had no application pending for a license. He says he issued a citation to Martinez for operating a dealership without a license in violation of the state Motor Vehicle Code.

Martinez disputes many of Longoria's and Duranceau's assertions. He states in his affidavit that no members of the public were entering or leaving his lot on March 17, 2000, that he did not attempt to sell a vehicle to anyone, and that he was not open for business on that date but rather was getting ready to open while awaiting issuance of his business license, and that he told the officers as much in response to their questioning.

Martinez further says that he purchased a number of vehicles from another dealership and that he moved a few of these cars to his own lot in anticipation of receiving a license. He states further that on the day in question, the previous tenant of the lot had opened the gate and was removing his automobiles from the lot so that Martinez could move in. One inference that could be drawn from these assertions is that the reason for the open gate and other activity on Martinez' lot was not because he was actively engaging in automobile sales, but rather because he was preparing to open for business in anticipation of soon being licensed, and the previous lessee was engaged in moving his property off the lot.

Martinez provided documentary evidence with his affidavit to show that he submitted an application for a license and paid the premium on the required bond, on March 9, 2000. He says that

he showed the application and bond to the officers when they asked to see it on March 17. He states further that he erected the "Martinez Auto Sales" sign, because he was required to provide a photo of an identifying business sign along with his license application.

Longoria states in his affidavit that, in addition to a business license, he asked Martinez to show him the paperwork for the automobiles on the lot, and in response Martinez produced a stack of documents from a briefcase. Longoria noticed that many of the certificates of title thus produced were "open" titles, meaning the registered owner had signed on the back as the Seller, but that there was no signature for any Buyer. Because of the illegal "open" nature of the titles, Longoria says he seized them "to take back to my office and review." He says that he told Martinez he would return the titles if Martinez could provide proof of ownership, but because Martinez never provided such proof, the titles remain in the custody of the Albuquerque Police Department. Duranceau agreed with Longoria's opinion that the certificates were deficient as evidence of a valid transfer or assignment of title, in that they did not contain information as to purchase price and name of the buyer.

Martinez disputes Longoria's statement that he opened his own briefcase and produced the certificates of title, stating instead that Longoria "got into my briefcase" and started looking at the titles and other paperwork without asking or receiving Martinez' permission to do so. Martinez says that, following the seizure, he made numerous attempts to retrieve his certificates of title but the Defendants would not respond; he states further that, even after the charge against him was dismissed, the officers rebuffed his attempts to regain his certificates of title. He says that he was never told he would have to provide additional proof of ownership of the titles in order to retrieve them, and further states that he lost his business because he could not retrieve his titles. In addition,

4

the MVD did not issue him a business license and never gave him a hearing on his application.

Both the County Defendants and the City Defendants move for summary judgment, arguing there are no issues of material fact to take to a jury and they are entitled to judgment as a matter of law. Duranceau also asserts qualified immunity as a basis for summary judgment.

In addition, Bernalillo County contends that Martinez has failed to make a showing, or even an allegation, of custom or policy so as to support a claim of municipal liability. Martinez seeks to remedy this deficiency by amending his complaint to include more particularized claims of municipal liability against the City and County; he also seeks to add the State Department of Taxation and Revenue as a defendant and to state a claim against this new defendant for failure to adequately train the police officers to whom it issued credentials.

The City further argues that Martinez is not entitled to punitive damages against the City itself nor against Longoria in his official capacity; Martinez concedes this point. The City also raises an issue regarding prejudgment interest which is premature at this point, as discussed below.

The Court finds that genuine issues exist which preclude summary judgment on Martinez' claims against both sets of Defendants. The Court finds further that amendment of the complaint to add a new defendant is not appropriate, but that Martinez should be allowed to amend the complaint in order to clarify his municipal liability claims against the City and County; the motion to amend should therefore be granted in part, and denied in part.

**Discussion**

A. The County Defendants' Motion for Summary Judgment.

Martinez raises two claims in his complaint: (1) that he was subjected to malicious prosecution by the Defendants, in that he was charged with operating a used car lot without a license

5

when in fact he had applied for a license and was not yet in business at the time the citation was issued; and (2) the Defendants confiscated his title documents without due process of law.

      1. Malicious Prosecution.

The County Defendants refer to this claim as a pendent state law cause of action; however, malicious prosecution may also be alleged as a § 1983 claim. Taylor v. Meacham, 82 F.3d 1556, 1560 (10th Cir. 1996):

> our circuit takes the common law elements of malicious prosecution as the "starting point" for the analysis of a § 1983 malicious prosecution claim, but always reaches the ultimate question, which it must, of whether the plaintiff has proven a *constitutional* violation. [Emphasis in original].

Id., at 1561.

In New Mexico, the malicious prosecution cause of action is called "malicious abuse of process." DeVaney v. Thriftway Mktg. Corp., 124 N.M. 512, 953 P.2d 277 (1997). A plaintiff asserting malicious abuse of process must establish the following elements: (1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages. The Court finds that there are genuine issues of fact as to these elements and as to whether a constitutional violation occurred in this matter.

In connection with this claim, the County defendants contend that the nature and timing of the signage at Martinez' lot, the fact that the lot was open and had cars on it which appeared to be offered for sale, and that members of the public appeared to be coming and going from the lot, led them to suspect that Martinez was actively selling cars on March 17, 2000. They say that the officers

called the Motor Vehicle Department and were told that Martinez did not have a license nor did he have any application pending. Thus, they argue, the actions of the deputy sheriff who issued the citation were proper and designed to enforce New Mexico law, and the officer did not act with an improper motive.

Martinez, however, has submitted documentary evidence that he filed an application for a license, and obtained the necessary bond, approximately six days before the citation was issued. He states that he was awaiting a decision on the license before actually opening for business, and that he told the officers this and showed them copies of the application and bond. Neither party suggests a reason why the MVD did not seem to have a record of this application when the officers called to inquire about Martinez' licensure. Furthermore, Martinez has alternative explanations for the presence of cars on the lot and the comings and goings of persons whom the officers thought were customers. He states that one of the officers made disparaging remarks about his national origin during the process of questioning him, and he argues that the evidence raises an inference that the officers issued the citation for operating without a license, in order to deprive him of the use of his certificates of title and to damage or destroy his business.

The Court finds there are sufficient factual disputes on the elements of malicious prosecution to preclude summary judgment on the issue of whether the deputy sheriff acted properly in citing Martinez for operating the car lot without a license. Defendants clearly initiated judicial proceedings against Martinez by issuing a citation under NMSA (1978) § 66-4-9 and thereby charging him with a misdemeanor punishable by at least thirty days' incarceration or a fine of $300.

The second element of the cause of action, an improper act by the defendant in the use of the process, may be established by showing that the action was instituted without probable cause.

DeVaney, 124 N.M. at 520. "For this purpose, we define probable cause as the reasonable belief, founded on known facts established after a reasonable pre-filing investigation." Id. There are conflicting inferences to be drawn from the evidence as to whether Defendants' pre-filing investigation was reasonable, and whether they had a reasonable belief that Martinez was operating without a license. "The existence of probable cause is a matter of law and shall be decided by the trial judge . . . However, the circumstances surrounding the filing of the complaint, if in dispute, must be resolved by a fact-finder." Id., 124 N.M. at 525. In the present case, Defendants assert that they made inquiry of the MVD and were told that Martinez did not have a license or pending application. However, Martinez provides evidence that he had, indeed, applied for a license and otherwise complied with statutory requirements at the time he was cited, and that he told the officers this and showed them the application documents. Whether Defendants conducted a reasonable investigation, or any investigation at all, is a matter to be decided by the jury.

Also in dispute is the issue of whether Defendants had as their primary motive the misuse of process to accomplish an illegitimate end. Defendants assert that they were acting properly in enforcing the Motor Vehicle Code. Martinez claims that, in the course of questioning him, at least one of the officers used epithets regarding his national origin and inability to speak good English. He argues that this use of epithets, along with the lack of probable cause and the summary manner in which the certificates of title were seized, raises an inference of improper motive.

> The following are typical examples of the improper purposes that could serve as the basis for a malicious abuse of process action: (1) a litigant pursues a claim knowing that it is meritless; (2) a litigant pursues a claim primarily in order to deprive another of the beneficial use of his or her property in a manner unrelated to the merits of the claim; (3) a litigant misuses the law primarily for the purpose of harassment ...

8

DeVaney, 124 N.M. at 522. The Court finds that the evidence raises conflicting inferences as to whether any of these reasons, or others, motivated Defendants herein, conflicts which cannot be resolved on summary judgment. The issue of damages is also in dispute, Martinez claiming that he was deprived of the benefit of his business as a result of Defendants' improper use of the judicial process.

These conflicting facts and inferences raise constitutional issues and preclude summary judgment on the issue of whether Duranceau acting properly in charging Martinez with operating a car lot without a license.

### 2. Seizure of Titles Without Due Process.

The County Defendants contend that Martinez produced certificates of title that were signed by the seller but not by the buyer, and which were otherwise incompletely filled out, and that the officers who seized the titles therefore acted within their authority in doing so. The County argues that Martinez did not have a protected property interest in the titles in the sense of a "legitimate claim of entitlement," because the titles were irregular as they were not filled out in accordance with state law. The MVD, Defendants claim, is authorized to take possession of any documents issued by it, including certificates of title, when there is some "erroneous or improper condition" with regard to the documents, citing NMSA § 66-2-9, and they were acting on behalf of the MVD in making the seizure.

Martinez counters that he had a legitimate property interest not only in the certificates of title, but also in the motor vehicles themselves and in his "fledgling business," which was destroyed by the actions of the Defendants. Martinez cites NMSA (1978) § 66-4-1, which sets forth the due process requirements the state must follow in shutting down an unlicensed car dealer. The statute requires

9

that the secretary of the Taxation and Revenue Department apply to the state district court for an injunction to prevent the dealer from engaging in business until he complies with the statutory licensing and bonding requirements. It further provides that the court may issue a temporary restraining order, and the matter must be heard within three days.

Martinez argues that summary seizure of his titles, without notice or a pre-deprivation hearing, violates his due process rights. He disputes Defendants' contentions that the titles contained irregularities. He argues that the statute cited by Defendants, which they claim gave them authority for the seizure, requires that the titles be expired, revoked, canceled, suspended, otherwise fictitious or unlawfully or erroneously issued, and that his certificates of title did not fall into any of these categories.

He argues further that his rights were violated when the MVD did not act on his application for a license, neither issuing one, denying one, or providing him a hearing and a right to appeal, as the statute requires. He says that, to this day, no action has been taken on his application, and Defendants in effect substituted an illegal and unconstitutional seizure of the titles (which have yet to be returned to him) in lieu of the mandated statutory procedure for shutting down an allegedly unlicensed business.

Martinez has met his burden of raising issues which preclude summary judgment, as the questions of whether he had a legitimate property interest in the certificates of title, and whether the officers acted properly under all of the circumstances, involve issues of fact that require further development.

    3. <u>Qualified Immunity</u>.

The County Defendants also argue that Duranceau, the deputy sheriff involved in the citation-

issuing and title-seizing activity, is entitled to qualified immunity, as his actions did not violate clearly established statutory or constitutional rights of which a reasonable police officer would have known. Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727 (1982). They argue that the deputy was authorized by state statute to seize the certificates and therefore no constitutional rights were violated.

> Qualified immunity shields government officials from the burdens of lawsuits stemming from the exercise of discretionary authority, yet it also allows for the vindication of constitutional rights ... In striking a balance between these two competing goals, the Supreme Court has formulated a test based on the "objective reasonableness" of the conduct at issue as compared with the state of the law at the time of the alleged violation ... [U]nder this test, the burdens of a trial and personal liability may not be imposed on a government official for the exercise of discretionary authority unless his conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."

Jantz v. Muci, 976 F.2d 623, 627 (10th Cir. 1992).

To prevail on summary judgment once a defendant raises this defense, plaintiff must demonstrate a substantial correspondence between the defendant's conduct and "prior law allegedly establishing that the defendant's actions were clearly prohibited." Jantz, at 627. Martinez has met this burden. The statutory procedures for preventing a dealer from operating without a license were well established at the time the citation was issued and the certificates were seized. The Court finds, as discussed above, that there is sufficient dispute on the issue of whether the deputy acted properly in issuing the citation that summary judgment is not appropriate, and qualified immunity is not available to Defendant Duranceau.

### 4. Policy and Custom Claims Against the County.

The County Defendants also argue that Martinez failed to state a claim against the County

and against the deputy sheriff in his official capacity in that there has been no showing, or even any allegation, of a policy, custom or procedure on the part of the County which led to the constitutional deprivation and thus no basis for municipal liability.

Martinez acknowledges that his complaint does not specifically allege a "custom or policy" claim against the county, but he attempts to cure this defect by seeking to amend the complaint for a second time to add claims against the County, as well as the City, for maintaining a custom of inadequately training officers (and also to add a new Defendant, the State Department of Taxation and Revenue, which he claims also engaged in a policy of inadequately training the officers to whom it issued credentials). Martinez argues in his memorandum that "Plaintiff will establish liability by showing inadequate police training which will result in constitutional liability for the county. Where the failure to train reflects a deliberate or conscious choice by the County – a policy – it will be liable for such failure under § 1983."[1]

Martinez' municipal liability claims against the City and County are not well developed at this point, but Defendants have not met their burden of showing that there is no factual issue with regard to failure of training. The failure to allege custom and policy with sufficient particularity in the original and first amended complaint appears to have been an oversight on the part of Plaintiff's counsel, and Plaintiff should not be prejudiced thereby. The Court finds no prejudice to the City and County by allowing this amendment; they were both named as defendants from the beginning and should have been alerted that municipal liability would be at issue, even if inartfully pled.

As discussed below in the section addressing Martinez' Motion to Amend, the Court will

---

[1]Martinez asserts also that he will need further discovery on this issue and that a motion to allow additional discovery is currently circulating under the motion package rule. No such motion package has as yet been filed.

allow Martinez to amend the complaint to include failure-to-train allegations against the City and County.

  B. <u>The City Defendants' Motion for Summary Judgment</u>.

    1. <u>Malicious prosecution</u>.

The City Defendants argue that Martinez cannot show two of the required elements of this cause of action, in that he cannot show a lack of probable cause, nor can he establish that the city police officer's misuse of the process was done to further an illegitimate end.

Their argument on the probable cause issue is similar to the County Defendants', although the City adds the factual claim that Martinez was advertising vehicles for sale, that he responded to an inquiry to purchase a vehicle, and that he attempted to sell a vehicle to an undercover officer. As noted above, Martinez counters that he had applied for and was awaiting his license at the time of the citation and seizure, that having a lot and a sign were prerequisites to getting a license and did not constitute advertising, and he disputes that he attempted to sell a vehicle to an undercover officer. These factual issues preclude summary judgment on the malicious prosecution claim.

    2. <u>Seizure of Titles Without Due Process</u>.

The City Defendants assert qualified immunity with respect to the seizure issue, arguing that it appeared to Longoria, the city police officer, that Martinez was selling cars without a dealer's license, and that the officer was simply conducting an administrative inspection of the dealer's business, as authorized by state statute. They describe the joint law enforcement task force set up by the State to enforce the licensing provisions of the Motor Vehicle Code and argue that the city officer seized Martinez' titles "to further investigate the history of titles because they were not documented in accordance with state statute and Plaintiff did not have a dealer's license." They point

13

to NMSA (1978) § 66-2-9 as authority for the seizure.

Martinez points out, in response, that he had complied fully with all requirements of the Motor Vehicle Code regarding licensure and was waiting for his license to be issued before he sold any vehicles, that Defendants filed a charge against him without probable cause, and that they filed the claim in order to deprive him of the use of his titles. He notes that, even after dismissal of the charges against him, Defendants did not return the certificates of title to him and, indeed, have kept them to this day. He argues that a reasonable person in Longoria's shoes should have known that confiscation of the vehicle titles without due process was contrary to law, and that Longoria violated his constitutional due process rights by not following the statutory procedures for shutting down an illegal auto sales business and confiscating the titles. The City responds that the statutory procedures are not mandatory but represent only one avenue for law enforcement to follow. This argument is not supported by the language of the statute, and the Court rejects it.

For the same reasons given above in connection with the County Defendants' arguments on this issue, the Court finds that there are outstanding issues precluding summary judgment on the question of seizure of the certificates of title.

### 3. Prejudgment Interest

The City takes issue with Martinez' prayer for prejudgment interest against both the City as an entity and against Longoria, the city police officer. Martinez argues that the City is not exempt from paying interest, and the officer is subject to prejudgment interest on any recovery against him in his individual capacity. This issue is premature; it is not appropriately raised in a motion for summary judgment but must await an award of damages, if any.

C. <u>Martinez' Motion to Amend the Complaint</u>.

As noted above, Martinez seeks to amend his complaint to add a claim against the State Department of Taxation and Revenue and to allege that the Department, the County, and the City failed to provide adequate training to the individual officers who participated in the citation and seizure incidents. He states that the additional allegations are necessary to state a claim for municipal liability based on "policy or custom."

Both the City and County oppose the motion to amend and have filed separate responses thereto; Martinez did not file a reply. The City argues that the proposed amendment is untimely, and in any case, the responsibility for training the city police officer is lodged with the City, not with the State Department of Taxation and Revenue (in spite of the fact that the city officer was issued credentials by the Department to enforce the Motor Vehicle Code outside the city limits).

The County argues that adding the Department as a Defendant would be a futile gesture, in that the State Department of Taxation and Revenue is immune from suit in federal court under the Eleventh Amendment. In addition, the fact that the officers may have been "credentialed" by the Department to enforce the Motor Vehicle Code outside the city limits of Albuquerque is immaterial, as this incident occurred within the city limits, where the officers have clear jurisdiction to enforce the state Motor Vehicle Code simply by virtue of their status as peace officers. The Court does not find it necessary to reach the Eleventh Amendment issue but agrees that any credentialing by the State is immaterial; Martinez' request to add a new party at this late date will therefore be denied.

However, as discussed above, the Court will exercise its discretion to grant the motion to amend to add more particularized "municipal liability" claims against the City and County, as these entities are already parties to this suit and such an amendment would not unduly prejudice them.

15

Their arguments that the amendment is untimely since Plaintiff could and should have made these allegations in his original complaint, and that the allegations are merely generalized legal conclusions, are not without merit. However, the Court finds the amendment is appropriate; it will still remain, of course, for Martinez to prove the allegations.

## Order

IT IS THEREFORE ORDERED that the Motion for Summary Judgment [Doc. 22] by Defendants City of Albuquerque and Danny Longoria is denied;

IT IS FURTHER ORDERED that the Motion for Summary Judgment [Doc. 26] by Defendants County of Bernalillo and Steve Duranceau is denied;

IT IS FURTHER ORDERED that Plaintiff's Motion to Amend the Complaint [Doc. 34] is granted in part, insofar as Plaintiff seeks permission to amend the complaint to clarify the allegations of municipal liability against Defendants City of Albuquerque and County of Bernalillo; and is denied in part, insofar as Plaintiff seeks permission to add the State Department of Taxation and Revenue as a defendant. Plaintiff will have 10 days from the date of this order to file the amended complaint.

                                                _____
                                                Lorenzo F. Garcia
                                                United States Magistrate Judge