IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FELIPE MARTINEZ,

        Plaintiff,

  vs.                                                                            No. CIV 01-259 LFG/DJS

CITY OF ALBUQUERQUE, and
DANNY LONGORIA, COUNTY OF BERNALILLO,
and STEVE DURANCEAU,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## ON DEFENDANTS COUNTY OF BERNALILLO AND STEVE DURANCEAU'S
## SECOND MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court on the second Motion for Summary Judgment [Doc. 88] by Defendants County of Bernalillo ("the County") and Steve Duranceau ("Duranceau"). For the reasons given below, the motion is denied.

### Factual and Procedural Background

In this Section 1983 action, brought in state court and removed to federal court by Defendants, Felipe Martinez ("Martinez") seeks compensatory and punitive damages based on allegations that he was subjected to malicious prosecution and was deprived of his property without due process of law. In a memorandum opinion and order [Doc. 57] dated November 28, 2001, the Court denied an earlier motion for summary judgment [Doc. 26] by Duranceau and the County, as well as a summary judgment motion [Doc. 22] filed by defendants City of Albuquerque and Danny Longoria ("Longoria").

This motion is essentially a duplicate of Duranceau's and the County's earlier summary judgment motion; they argue, however, that it is now appropriate to enter summary judgment in their favor, based on additional evidence which has come to light in the discovery process. They also ask the Court to dismiss Martinez' municipal liability claim against the County, arguing that discovery taken since Martinez amended his complaint to add this claim has not demonstrated a factual issue regarding municipal liability.

The following facts are taken from affidavits filed in connection with two earlier summary judgment motions in this case, and from the deposition extracts attached to the parties' briefs on this motion.

Defendant Danny Longoria ("Longoria"), a police officer employed by the Albuquerque Police Department ("APD"), stated in an affidavit filed in connection with the earlier summary judgment motion that on March 17, 2000, he was assigned to APD's Auto Theft Unit and was also commissioned by the Motor Vehicle Division ("MVD") of the New Mexico Taxation and Revenue Department, to investigate violations of the Motor Vehicle Code. On that date, Longoria was working on an investigation along with Defendant Steve Duranceau ("Duranceau"), a deputy with the Bernalillo County Sheriff's Department. While investigating a dealership across the street from a lot leased by Plaintiff Martinez, the officers noticed that a sign which previously identified the business as "Valley Auto Sales" had been changed and now read "Martinez Auto Sales."

Longoria thereupon sent in an inquiry to the MVD to determine whether Martinez Auto Sales was licensed for business. He says in his affidavit that MVD informed him that there was no auto dealer licensed for business at the Martinez Auto Sales address. Longoria also stated in his affidavit that two detectives attempted to purchase an automobile from Martinez, and that Martinez attempted

2

to sell a vehicle. Longoria later acknowledged in his deposition that this statement was not true.

Duranceau stated in an affidavit filed in connection with his first motion for summary judgment, that while investigating the dealership across the street from Martinez Auto Sales, he and Longoria noticed Martinez' sign and observed that the gates to the Martinez lot were open, that there were a number of automobiles parked on the lot which appeared to be the same automobiles offered for sale by a previous proprietor of the Martinez lot, and that a number of people who appeared to be customers were entering and leaving the lot. Duranceau stated further in the affidavit that this activity led him and Longoria, along with a special agent from the state Motor Vehicle Department ("MVD"), to walk across the street to speak with Martinez, whom they found standing next to an automobile with an open trunk. In his deposition, Duranceau said essentially the same thing as he had in his affidavit, except that he drove into the lot rather than walking. He also clarified that he only saw two people on the lot, that they were there for a few minutes only, and although he assumed they were customers, he did not see them buy a vehicle from Martinez.

Longoria also stated in his affidavit that he approached Martinez and identified himself as a police officer, after Martinez attempted to sell an automobile to the two detectives. Duranceau said in his affidavit that when the officers identified themselves and asked to see Martinez' dealer's license, he responded that his license was "in process" and did not deny that he was open for business.

Duranceau confirms Longoria's statement that MVD told the officers that Martinez had no application pending for a license. Duranceau says he issued a citation to Martinez for operating a dealership without a license in violation of the state Motor Vehicle Code. In his deposition, Duranceau explains that he issued the citation, because it appeared that Martinez was operating a dealership without a dealer's license based on the facts that a sign was present, the gates were open,

there were people going in and out, and Martinez had " a number of dealer-type documents" in his car trunk, including titles, bills of sale, temporary registration permits and MVD documents.

Martinez states that the charge against him for operating without a dealer's license was filed in Metropolitan Court, but it was dismissed when defendants herein failed to permit discovery and failed to appear for trial.

Although Martinez accuses Longoria of using racially derogatory language in the course of these incidents, it is undisputed that Duranceau did not use such language.

Martinez disputes many of Longoria's and Duranceau's factual assertions, or the inferences to be drawn from them. He stated in an affidavit filed in response to the earlier summary judgment motions in this case, that no members of the public were entering or leaving his lot on March 17, 2000, that he did not attempt to sell a vehicle to anyone, and that he was not open for business on that date but rather was getting ready to open while awaiting issuance of his business license, and he says he told the officers as much in response to their questioning.

Martinez further said that he purchased a number of vehicles from another dealership and that he moved a few of these cars to his own lot in anticipation of receiving a license. Once he had a license, he said, the vehicles were to be titled in his name. He stated further that on the day in question, the previous tenant of the lot had opened the gate and was removing his automobiles from the lot so that Martinez could move in. One inference that could be drawn from these assertions is that the reason for the open gate and other activity on Martinez' lot was not because he was actively engaging in automobile sales, but rather because he was preparing to open for business in anticipation of soon being licensed, and the previous lessee was engaged in moving his property off the lot.

Martinez also states that, although there were some people on the lot, they were not there for

the purpose of purchasing vehicles, and he did not sell them any vehicles. As noted above, Duranceau stated in his deposition that he saw two people on the lot, but they only remained there for a few minutes and he did not see anyone buy a vehicle from Martinez. On the other hand, Longoria said in his deposition that he did not observe anyone on the lot prior to the time the officers approached Martinez.

Martinez provided documentary evidence in connection with his response to the earlier motions for summary judgment to show that he submitted an application for a license and paid the premium on the required bond, on March 9, 2000. He said that he showed the application and bond to the officers when they asked to see it on March 17. In his deposition, Martinez stated that he has never sent in an application for a dealer's license. However, he explained that he drove up to Santa Fe two or three times to submit his application for a dealer's license but was told that he had to obtain a zoning permit before his application could be accepted, and then his vehicle titles were confiscated by Longoria before he had a chance to submit the application.

Martinez stated further in his affidavit that he erected the "Martinez Auto Sales" sign, because he was required to provide a photo of an identifying business sign along with his license application.

Longoria stated in his affidavit that, in addition to a business license, he asked Martinez to show him the paperwork for the automobiles on the lot, and in response Martinez produced a stack of documents from a briefcase. Longoria noticed that many of the certificates of title thus produced were "open" titles, meaning the registered owner had signed on the back as the Seller, but that there was no signature for any Buyer. Because of the illegal "open" nature of the titles, Longoria said he seized them "to take back to my office and review." In his deposition, Longoria clarified that the problem with open titles is that there is no reliable way to establish how the car got to the person who

5

now claims to own it.

Longoria stated further in the affidavit that he told Martinez he would return the titles if Martinez could provide proof of ownership, but because Martinez never provided such proof, the titles remain in the custody of the Albuquerque Police Department. Duranceau agreed with Longoria's opinion that the certificates were deficient as evidence of a valid transfer or assignment of title, in that they did not contain information as to purchase price and name of the buyer. Duranceau himself did not confiscate, hold or retain any of the vehicle titles, and Martinez did not contact Duranceau to request that the titles be returned; his only contact for such requests was with Longoria.

Martinez disputes Longoria's statement that he opened his own briefcase and produced the certificates of title, stating instead that Longoria "got into my briefcase" and started looking at the titles and other paperwork without asking or receiving Martinez' permission to do so. Martinez says that, following the seizure, he made numerous attempts to retrieve his certificates of title but the defendants would not respond; he states further that, even after the charge against him was dismissed, the officers rebuffed his attempts to regain his certificates of title. He says that he was never told he would have to provide additional proof of ownership of the titles in order to retrieve them, and further states that he lost his business because he could not retrieve his titles. In addition, the MVD did not issue him a license and never gave him a hearing on his application (although he concedes, as noted above, that he never got to the stage of submitting an application).

Duranceau argues that Martinez "was aware of a method of obtaining sufficient duplicate titles to the vehicles he held for resale," as evidenced by Martinez' deposition testimony that he was able to "fix up" two or three of the vehicles on the lot and to "fix up" the titles so they could be sold.

6

The inference he would apparently draw from this information is that Martinez was not deprived of his business by defendants' actions.

Duranceau asserts that, prior to the incident in question, he was trained in investigating violations of the New Mexico Motor Vehicle Code, including a one-week theft investigators training course administered by the Albuquerque Police Department, and a separate one-week training course put on by the New Mexico Auto Theft Investigators Association.

## **Discussion**

The County of Bernalillo and Duranceau move for summary judgment, arguing there are no issues of material fact to take to a jury and they are entitled to judgment as a matter of law. Specifically, these defendants argue that Duranceau issued the citation to Martinez pursuant to his reasonable belief that Martinez was violating New Mexico law and that his actions were motivated solely by his duty to enforce the law, and therefore his actions do not constitute malicious abuse of process as claimed by Martinez.

In addition, defendants argue that there is no genuine issue of fact as to whether Duranceau or any other Bernalillo County deputy confiscated motor vehicle titles related to Martinez's business, or retained any titles, or took any actions that prevented Martinez from continuing to pursue a license to operate his business. Thus, defendants argue, it is clear as a matter of law that they did not violate Martinez' constitutional rights nor did they commit any tort for which immunity has been waived under the New Mexico Tort Claims Act.

Duranceau also asserts again a qualified immunity defense, and the County argues that it is clear as a matter of law that it adequately trained its officers and thus, Martinez' "policy and custom" claim is subject to summary judgment.

The Court finds that genuine issues exist which preclude summary judgment on Martinez' claims against the County and Duranceau. The motion should therefore be denied.

1. <u>Malicious Abuse of Process</u>

Defendants argue that, although Martinez supplies alternative explanations for the open gate, the people on the lot, the lack of a license, and the possession of open titles, among other things, these disputes go the issue of whether Martinez had the subjective intent to sell vehicles without a license, and are immaterial to the true issue in this case, that is, whether Duranceau had objectively reasonable grounds to believe that probable cause existed for issuance of the citation, based on the observations he made on March 17, 2000. Duranceau argues that, because his actions were objectively reasonable as a matter of law, he is entitled to summary judgment on the malicious abuse of process claim.

In its ruling on defendants' prior summary judgment motion, the Court wrote that issues of fact exist as to each element of the cause of action for malicious abuse of process. Duranceau now argues that new evidence adduced in discovery precludes issues of fact on two elements of this cause of action: (1) that there was "an act by defendant in the use of process other than such as would be proper in the regular prosecution of the claim"; and (2) that there was a primary motive by the defendant in misusing the process to accomplish an illegitimate end. In addition, defendants argue, Martinez has failed to establish an issue of fact as to a constitutional violation, as required under his Section 1983 claim.

Duranceau again argues, as he did in his first motion, that as a matter of law his issuance of the citation was supported by legitimate, objective probable cause, based on his observations and investigation. He contends that Martinez' exculpatory explanations go only to his own subjective

8

state of mind, and that the information available to Duranceau's perception compels the conclusion that he had an objectively reasonable basis to believe that probable cause existed for issuance of the citation.

However, Martinez claims that defendants failed to conduct an adequate investigation of the facts before issuing the citation, and their conclusions about what was afoot at the car lot was therefore not objectively reasonable. Duranceau has raised no new and compelling evidence on this point since the first summary judgment motion, and the jury should be allowed to decide whether the investigation was adequate and whether Duranceau's conclusions were reasonable.

As to the second element, the Court wrote in its earlier opinion denying summary judgment that at least one of the officers used epithets referring to Martinez' national identity and inability to speak English very well, and that this conduct and language, coupled with the lack of probable cause, raises an inference of improper motive. The leading New Mexico case on malicious abuse of process, Devaney v. Thriftway Mktg. Corp., 124 N.M. 512, 953 P.2d 277 (1997), sets forth as "typical examples" of improper purposes that would support this cause of action the fact that the Defendant is pursuing the claim against Plaintiff in order to deprive Plaintiff of the beneficial use of his property in a manner unrelated to the merits of the claim, or that Defendant is misusing the law primarily for the purpose of harassment. Harassment may take the form of racial epithets.

Duranceau points out that he himself did not use racial epithets, and that it was Longoria who confiscated the vehicle titles. Martinez confirms that it was Longoria, not Duranceau, who spoke rudely to him and who confiscated the documents. In addition, Martinez admits that he did not contact Duranceau in an attempt to retrieve the documents after the fact. It will undoubtedly be easier for Martinez to establish that Longoria had an "improper motive"; however, all of the officers

9

on the scene that day were acting together, and there is nothing on the record to indicate that any of them took steps to prevent the others from behaving as they did. It would undoubtedly be more intimidating for Martinez to be confronted with three peace officers rather than one, and the net effect of their actions was that Martinez was cited, his property was confiscated, and his business allegedly ruined.

It may well be that Duranceau will be found by the jury to have acted with probable cause; perhaps they will credit his argument that he had an objectively reasonable belief that Martinez was breaking the law. And perhaps they will be convinced that Longoria was the "bad cop" who used racial epithets, lied about the facts in his affidavit, and had an improper motive in pursuing the course of action against Martinez. But it should be the jury who makes that determination. The fact that Duranceau was present at the scene, issued a citation, and didn't question Longoria's seizure of the documents or his use of inappropriate language, may be enough for the jury to find a malicious abuse of process. In addition, Martinez states that the Defendants didn't appear for interviews following issuance of the citation and refused to appear for trial, with the result that the charges were dropped. This is enough to establish a dispute as to malicious prosecution, and the matter should be left for the jury to decide.

    2. <u>Deprivation of Property Without Due Process</u>

Defendants' argument with regard Martinez' cause of action for deprivation of property without due process – that property consisting of the vehicle titles, the motor vehicles themselves, and his "fledgling business" – is the same argument made in the earlier motion. Defendants raise nothing new in the subsequent discovery on this issue to indicate the lack of an issue of fact.

In particular, the Court points out that the fact that Duranceau is not the officer who actually

10

seized the titles does not necessarily mean that he didn't have a hand in depriving Martinez of his "fledgling business." The jury should be allowed to decide this issue.

### 3. Qualified Immunity

At the time Duranceau issued the citation, the law was clearly established that an officer could not charge a crime without probable cause. In addition, the statutory procedures for preventing a dealer from operating without a license, and which Martinez argues were violated in this case, were also clearly established at the time of the incident.

Martinez contends that the proper procedure for defendants to follow, if they reasonably thought he was operating without a license, would have been to seek a judicial order enjoining his operation of the car lot, rather than simply seizing his vehicle titles. No reasonable officer in Duranceau's position would have believed that he had authority to shut down Martinez' business without following the prescribed statutory procedures, and qualified immunity is therefore not available to defendants in this case. Saucier v. Katz, 533 U.S. 194, 121 S. Ct. 2151 (2001).

### 4. Policy and Custom Claim Against the County

The Court, in its opinion on the prior summary judgment motion, allowed Martinez to amend his complaint to more specifically allege a "custom and policy" claim against the County, in accord with Myers v. Okla. County Bd. of County Comm'rs, 151 F.3d 1313 (10th Cir. 1998). Martinez' allegation involves a claim that the County maintained a custom of inadequately training officers.

The County points to deposition testimony that Duranceau was trained "in at least two separate courses on the application and enforcement of the Motor Vehicle Code," and that in this training, Duranceau was informed that motor vehicle titles were the property of the State, not the individual holding them, and that "open" titles were considered fictitious.

11

Martinez argues that all of the training Duranceau received was after the March 17, 2000 incident which forms the basis of this lawsuit. Defendants dispute this, and point to Duranceau's deposition as evidence. The deposition does not clearly establish that Duranceau had any training at all prior to March 2000. At one point, he mentions some training that occurred in November of either 1999, or November of 2000; he doesn't remember which it was. Even if he could establish without dispute that he took two week-long training courses prior to the March 2000 incident, this fact would not compel summary judgment in favor of the county. The jury should be allowed to determine whether the County's training policy was adequate.

    5. <u>NM Tort Claims Act</u>

Defendants argue that it is unclear whether Martinez is alleging pendent claims under the state tort claims act, but to the extent he is, they argue, summary judgment is appropriate for the same reasons that apply to the Section 1983 claims.

Having found that the Section 1983 claim is not subject to summary judgment, the Court rejects defendants' identical argument with regard to any pendent state claims.

## **Order**

IT IS THEREFORE ORDERED that the Motion for Summary Judgment [Doc. 88] filed by defendants County of Bernalillo and Steve Duranceau is denied.

                                                  */s/ Lorenzo F. Garcia*
                                                  Lorenzo F. Garcia
                                                  United States Magistrate Judge